[No. B008800. Second Dist., Div. Four. May 23, 1985.]

CARLSON INDUSTRIES, Cross-complainant and Appellant, v.
E. L. MURPHY TRUCKING CO., Cross-defendant and Respondent.

692

COUNSEL

Garfield, Tepper & Ashworth and Christopher Ashworth for Cross-complainant and Appellant.

James L. Moser for Cross-defendant and Respondent.

OPINION

**ARGUELLES, J.**— In this property damage action against a common carrier, we must determine whether the measure of damages for "ac-

tual loss" includes the substantial cost of a proposed inspection to determine the existence and scope of damage to equipment. We find that such a cost, as incidental to the cost of reasonable, attempted repair, is a compensable "actual loss."

■ We further address the question of whether the trial court may retain jurisdiction solely to adjudicate the issue of damages discovered in the course of a future inspection. We conclude that such a limited reservation of jurisdiction would not constitute an abuse of discretion where, in the absence of such an inspection, it is otherwise impossible to ascertain the existence and scope of the damages.

Appellant Steve Carlson, doing business as Carlson Industries (shipper), defendant in the underlying action for nonpayment of interstate shipping charges, cross-complained against respondent E. L. Murphy Trucking Co. (carrier) for damages to his interstate shipment pursuant to the Carmack Amendment to the Revised Interstate Commerce Act. (49 U.S.C.A. § 11707.) ■ ■ ■ ■ Shipper appeals from the judgment rendered in his favor on the cross-complaint.[1]

### FACTS

On May 20, 1982, shipper entered into a contract with carrier, a common carrier operating a trucking service characterized as heavy hauling, to transport one P & H truck crane weighing approximately 90,000 pounds from Appleton, Wisconsin, to shipper's place of business at Los Angeles, California. Shipper had purchased the crane at auction in Wisconsin for $135,000, but believed it was worth between $200,000 and $250,000.

In Wisconsin the crane was loaded onto carrier's flatbed trailer with shipper following behind with his son, a Carlson employee, in another truck. As the trailer pulled onto the road and straightened out, smoke was seen coming from the trailer as if the emergency brake was left on. The trailer proceeded down the road about a quarter of a mile when it appeared to stop suddenly. The trailer's gooseneck hitch had fallen off the rear of the tractor, digging into the asphalt. As a result, the crane lunged forward, hitting the gooseneck, broke the chains that secured it, and fell partially onto the asphalt road. After the accident, a one-inch thick steel outrigger box on the crane was observed to be dented. The crane was reloaded onto another trailer and shipped to Los Angeles.

---

[1]Although judgment was rendered in shipper's favor, the damages awarded were substantially less than he demanded. Therefore, his appeal from the unfavorable part of the judgment is proper. (*In re Marriage of Schultz* (1980) 105 Cal.App.3d 846, 852 [164 Cal.Rptr. 653]; see generally 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 121, p. 4118.

At trial, shipper called an expert in the repair and maintenance of P & H cranes, Lynn Ballard, to testify. Mr. Ballard testified, as part of his qualifications, that he had 15 years experience in the repair of P & H cranes, that he had actually worked for P & H Crane Manufacturing for seven or eight years and that he was currently working for an authorized P & H dealer.

Mr. Ballard also testified that he had made three separate inspections of the damaged crane and formed opinions and conclusions as to the necessary repairs and the time and cost to make these repairs. As to the "visible damage" that he could determine solely from a cursory visual inspection of the crane without any disassembly, he testified that the labor alone would cost $4,406.05. He further determined that a "breakdown, magnaflux and reconstruct" inspection of the crane "would have to take place to be absolutely sure there were no defects." When asked whether he would warrant, after fixing only the visible damage, that the crane would perform as it was intended to perform, Mr. Ballard answered, "No."

He described the magnaflux inspection as trying to get an inside picture of the metal in certain areas and detailed the procedure as follows: "After the surface is clean, then you lay filings across the strut and an electric circuit is applied to the surface area. If there are any cracks, these particles will form along the cracks. You cannot see if the crack is there. It will form long cracks. It's called an electronic or a sonic beam. [¶] As these particles form, they will only form long cracks. If there [are] no cracks, they will lay stagnant. They won't do anything."

Mr. Ballard further indicated that such an inspection should be done over the entire lower frame of the crane. He estimated the cost of such an inspection on the damaged crane to be $50,000, and the time to perform such an inspection as well as to repair the visible damage to be 90 days.

Carrier offered no evidence to rebut Mr. Ballard's testimony.

At the conclusion of the trial, the court ordered judgment on the cross-complaint in the sum of $4,406.05, allowing shipper to recover the cost of repair for the visible damage to the crane, but not the cost of a magnaflux inspection to determine if any further damage occurred to the crane's metal structure. This appeal followed.

## CONTENTIONS

Shipper contends that the trial court erred in failing to award the proper measure of damages in its judgment. Specifically, shipper argues

that in selecting cost of repairs as the appropriate measure of damages, the court erred as a matter of law in failing to consider the estimated cost of the magnaflux inspection process as an allowable expense incidental to the cost of reasonable repairs.

## DISCUSSION

SHIPPER ARGUES, AND CARRIER DOES NOT DISPUTE, THAT THIS CASE IS GOVERNED BY THE CARMACK AMENDMENT TO THE REVISED INTERSTATE COMMERCE ACT (49 U.S.C.A. § 11707),[2] WHICH PROVIDES THAT AN INTERSTATE CARRIER IS LIABLE FOR "ACTUAL LOSS" TO THE SHIPPER WHERE GOODS DELIVERED TO THE CARRIER ARE DAMAGED IN TRANSIT. (*Id.*, subd. (a)(1); *Vacco Industries* v. *Navajo Freight Lines, Inc.* (1976) 63 Cal.App.3d 262, 269 [133 Cal.Rptr. 628].)

■ "When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for [¶] (a) the difference between the value of the chattel before the harm and the value after the harm or, at his election in an appropriate case, the reasonable cost of repair or restoration, with due allowance for any difference between the original value and the value after repairs, and [¶] (b) the loss of use." (Rest.2d Torts, § 928, p. 543.)[3]

■ "As a general rule, when property is damaged in shipment, the formula for determining the amount of damages is the difference between the market value the property would have had if it had been transported safely and the market value of the property in its damaged condition. [Citations.]" (*Reed* v. *Aaacon Auto Transport, Inc., supra,* 637 F.2d 1302, 1305; *Contempo Metal Furn., etc.* v. *East Tex. Mtr., etc., supra,* 661 F.2d 761, 764.)

---

[2]Formerly 49 United States Code Annotated section 20 (11), the section was recodified in 1978 by Public Law No. 95-473, 92 Statutes at Large 1337.

Subdivision (a)(1) of the new section reads, in part, as follows: "A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission . . . shall issue a receipt or bill of lading for property it receives for transportation . . . . That carrier and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission . . . are liable to the person entitled to recover under the receipt or bill of lading. The *liability imposed under this paragraph is for the actual loss or injury to the property* caused by (1) the receiving carrier, (2) the delivering carrier, or (3) another carrier . . . ." (Italics added.)

[3]Common law rules concerning damages apply under the Carmack Amendment. (*Vacco Industries* v. *Navajo Freight Lines, Inc., supra,* 63 Cal.App.3d 262, 275; see *Reed* v. *Aaacon Auto Transport, Inc.* (10th Cir. 1981) 637 F.2d 1302, 1305; *Contempo Metal Furn. Co.* v. *East Tex. Mtr. Freight Lines* (9th Cir. 1981) 661 F.2d 761, 764); *Automated Donut Systems* v. *Consol. Rail Corp.* (1981) 12 Mass.App.326 [424 N.E.2d 265, 270-271].)

■ "When there is a partial loss and the plaintiff successfully repairs the property, recovery may not be had both for repairs and the difference in value of the property. Such recovery would be duplicative. Similarly, if a plaintiff chooses to repair goods at a cost in excess of the market value of the property, in the usual case, he can only recover the market value, as *it normally is not reasonable to repair in such circumstances,* thereby enhancing the damages against the carrier. [Citations.] [¶] However, in cases where such repair efforts are reasonable at the time made, and it is only through hindsight that it becomes evident that the efforts were unsuccessful and enhanced the cost, there is no rule barring recovery for both attempted repairs and the difference in value of the property before and after loss. Permitting recovery for such attempts 'reflects the policy . . . of encouraging the injured party to make reasonable efforts to avoid loss by protecting him even when his efforts fail . . . .' [Citations.]" (*Automated Donut Systems* v. *Consol. Rail Corp., supra,* 424 N.E.2d at pp. 270-271; italics added.)

In the case before us, there was testimony from Frank Nelson, an expert with 28 years of experience in the field of buying, selling and renting cranes that the market value of the crane after the accident was "zero." He also corroborated shipper's testimony that the market value of the crane before the accident was approximately $200,000. This testimony was unrebutted.

■ Shipper maintains that the reasonable cost of inspection and testing to determine the necessity and scope of repairs to its crane by the magnafluxing of its lower frame for metal stress and fatigue not visible to the naked eye is an "actual loss" that is compensable under the amendment. He asserts that the use of the crane without magnaflux inspection offers the potential for death or serious injury, and claims that the trial court erred in assessing damages only for the estimated cost to repair the visible damage to the crane.

The court expounded in its statement of decision, and incorporated into its judgment, the following statement: "The Court feels that to require the Cross-Defendant [carrier] to pay $50,000.00 for magnafluxing of the entire weight bearing system of the machine is grossly unreasonable."

In *Vacco Industries* v. *Navajo Freight Lines, Inc., supra,* 63 Cal.App.3d 262, 273, the court identified a number of expenses compensable as "actual loss" under the Carmack Amendment: "Reasonable costs of repair are recoverable as one of the alternative measures of damages for goods injured in transit . . . . [Citations.] . . . Similarly, *expenses incurred in examining a damaged shipment to ascertain the extent of loss prior to repair . . . are*

*recoverable actual losses incident to a repair effort.* [Citation.]" (Italics added.)

Other jurisdictions interpreting the Carmack Amendment are in accord. In *Automated Donut Systems* v. *Consol. Rail Corp., supra,* 424 N.E.2d 265, 270-272, the shipper attempted, without success, to make its damaged equipment function and as a result incurred expenses exceeding $22,000. In holding such expenses to be compensable, the court commented: "We reject the defendant's claim that the plaintiff cannot recover its costs of inspection to determine whether to repair, to determine what parts were needed, and to determine the causes of ongoing problems. There is no reason to deny these costs, provided they were reasonable." Relying on cases from several jurisdictions, including *Vacco Industries* v. *Navajo Freight Lines, Inc., supra,* 63 Cal.App.3d 262, 273-274, the court reasoned that modern cases allow such costs and are in line with the policy of encouraging the injured party to make reasonable efforts to avoid loss. (See Rest.2d Contracts, § 347, com. c, p. 114, § 350, com. h, pp. 132-133.)

Moreover, labor costs leading to the discovery of concealed damage have been held to be compensable under the Carmack Amendment. (*Contempo Metal Furn., etc.* v. *East Tex. Mtr., etc., supra,* 661 F.2d 761, 766.)

In the present case, the testimony of shipper's expert, Lynn Ballard, in response to a question as to whether magnafluxing of the crane frame was "a reasonable and prudent thing to do" was that, "An inspection would have to take place to be absolutely sure there were no defects."

■ "The risk of reasonable but unsuccessful attempts to repair is upon the tortfeasor (see § 919), so that the damages recoverable may be greater if repairs are unsuccessful than the difference between the value of the subject matter before and after the tort." (Rest.2d Torts, § 928, com. a, p. 543; see also § 919, com. c, p. 509.)

Despite the evidence that the damaged crane had no objective market value after the accident, it apparently retained a potential future value to shipper, who sought at trial to recover the cost of repair as an alternative to the market value measure of damages. ■ As the existence and extent of any structural damage to the crane other than visible damage could not be determined until a magnaflux inspection was performed, the cost of repair of the visible damage and the cost of the magnaflux inspection—which inspection might disclose no further damage to the crane—were the only items of damage sufficiently certain at the time of trial to be compensable. (Civ. Code, § 3283; see Civ. Code, § 3301; see generally 23 Cal.Jur.3d, Damages, §§ 31-33, pp. 48-52.) Such compensable costs of repair totalled

approximately $54,406.05—well below the $200,000 diminution in the crane's market value. Clearly, the costs of repair sought by shipper here were reasonable. Accordingly, we must conclude that the trial court erred in failing to apply either the market value or the correct cost of repair measure of damages sought by shipper. ■ While the selection of which measure of damages to apply is within the sound discretion of the trier of fact (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 599 [83 Cal.Rptr. 418, 463 P.2d 770]), failure to correctly apply the measure selected is error.

■ Shipper argues that the remedy here would be an order compelling carrier to remit to him the market value of the crane before the accident in exchange for all right, title and interest in the damaged crane so that any difference between the price carrier paid to shipper and the subsequent cost of repair or the market value upon resale would represent the true measure of damages. Such a remedy cannot legally be compelled. ■ However, California courts have held that, although it is exceptional, it is not error for a trial court to reserve continuing jurisdiction to amend the judgment to insert the amount of additional damages if and when these amounts are determined. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 599 [83 Cal.Rptr. 418, 463 P.2d 770]; *Day* v. *Sharp* (1975) 50 Cal.App.3d 904, 911-912 [123 Cal.Rptr. 918].) The present case is exceptional because until a magnaflux inspection can be performed the existence of otherwise nonapparent defects in the crane's frame cannot be determined and shipper is saddled with what he aptly describes as a "liability time bomb."

## DISPOSITION

The judgment on the cross-complaint is reversed, and the cause is remanded for retrial on the issue of damages in a manner consistent with the views expressed herein.

McClosky, Acting P. J., and Dunn, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.