[No. C005869. Third Dist. Aug. 24, 1990.]

CMSH COMPANY, INC., et al., Plaintiffs and Respondents, v. ANTELOPE DEVELOPMENT, INC., Defendant and Appellant.

**COUNSEL**

William S. Gregory for Defendant and Appellant.

Wohl & Eggleston, Alvin R. Wohl and Thomas M. Mathiowetz for Plaintiffs and Respondents.

---

OPINION

DAVIS, J.—

## INTRODUCTION

In this case we are asked to determine whether inflation, as indicated in the consumer price index, should be considered in fixing damages for the nonexpungement of a lis pendens where the fair market value of the real property has actually appreciated during the lis pendens period. We hold that it should not and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 10, 1979, respondents CMSH Company, Inc., and Mohammad Mohanna (hereafter, CMSH) filed a complaint for specific performance and for damages for breach of contract and refusal to bargain in good faith against appellant Antelope Development, Inc. (hereafter, Antelope). The complaint alleged that Antelope entered into a written contract to sell CMSH units 6, 7, 8 and 9 of the Sunset East Subdivision, in the City of Rocklin, Placer County, for a purchase price of $1,184,500, but that Antelope refused to perform. It alleged that Antelope also granted CMSH an option to purchase unit 14 and a right of first refusal to purchase units 3, 10, 11, 12 and 13 of the subdivision. CMSH concurrently recorded a notice of pending action with the Placer County Recorder's office which encumbered only units 6 through 9.

Antelope answered and cross-complained. In its cross-complaint, Antelope alleged that as a result of CMSH's action preventing its sale of the property elsewhere, it would incur the following damages measured from July 17, 1979, the date Antelope signed its escrow instructions and deposited a deed to the property into escrow, until final judgment: (1) interest at 9 percent per annum on the $500,000 promissory note which CMSH was to assume as part of the purchase price; (2) loss of interest at the rate of 10 percent on $484,500 which CMSH was to pay Antelope as a promissory note toward the purchase price; (3) real property taxes on the property; (4) escrow and title examination fees incurred by Antelope in handling the escrow for the intended sale; and (5) an amount equal to the real estate commission which Antelope may have to pay for resale of the property.

Antelope thereafter filed a motion under Code of Civil Procedure section 409.1[1] to expunge the lis pendens or to require CMSH to post a bond to protect it from loss. The court denied the motion on condition that CMSH file an undertaking of $100,000 to indemnify Antelope against damage if CMSH did not prevail. CMSH obtained the required undertaking with Fidelity and Deposit Company of Maryland.

After a nonjury trial, the trial court determined that the parties never had a sufficient meeting of the minds to form a contract. Damages and specific performance were denied. Judgment was entered in favor of Antelope on the complaint and in favor of CMSH on the cross-complaint.

CMSH appealed. Antelope filed an unsuccessful motion to expunge the lis pendens or increase the bond during the appeal.

The judgment was affirmed. A remittitur was issued on July 7, 1982, and the lis pendens terminated.

CMSH filed a motion for an order to release its surety on the $100,000 bond. In response, Antelope filed a motion to enforce the surety's liability for its full value of the bond. In support of the motion, Antelope's president filed a declaration in which he claimed $512,608.61 in damages from the lis pendens for the amount of interest it had to pay on various loans secured by

---

[1] Code of Civil Procedure section 409.1 provides: "At any time after notice of pendency of an action has been recorded pursuant to Section 409 or other law, the court in which the action is pending shall, upon motion of a party to the action supported by affidavit, order that the notice be expunged, unless the party filing the notice shows to the satisfaction of the court, by a preponderance of the evidence that:

"(a) The action does affect title to or right of possession of the real property described in the notice; and

"(b) Insofar as the action affects title to or right of possession of the real property described in the notice, the party recording the notice has commenced or prosecuted the action for a proper purpose and in good faith. Notice of motion to expunge shall be served not less than 20 days prior to the hearing. The court shall determine the matter on the affidavits and counteraffidavits on file and upon such other proof as the court may permit. Upon recordation of a certified copy of the order expunging a notice of pendency of the action in the office of the county recorder in which the notice of the pendency of the action was recorded neither the notice of the pendency of the action nor any information derived therefrom, prior to the recording of a certified copy of the judgment or decree issued therein, shall constitute constructive or actual notice of any of the matters contained therein, or of any of the matters relating to such action, or create any duty of inquiry in any person thereafter dealing with the property described therein.

"The court, as a condition of granting or denying the motion to expunge, may require that the party prevailing upon such motion give the other party an undertaking of such nature, and in such amount as shall be fixed by the court, such undertaking to be to the effect that such prevailing party will indemnify the other party for all damages which he may incur if he ultimately prevails in the action."

All further undesignated statutory references are to the Code of Civil Procedure.

the property and for real property taxes. Antelope proposed two methods of measuring damages: the sum of the interest, loan fees and real property taxes incurred during the lis pendens period or by measuring the amount of interest it could have earned (calculated at 10 percent) had it been able to sell the property.

The court rejected CMSH's claim that Antelope was barred by collateral estoppel or res judicata from seeking the same damages it had asserted in its cross-complaint due to the court's finding that it was not a "prevailing party." Trial was set for damages.

The issue was again raised at trial. The court granted CMSH's motion for judgment on the pleadings on collateral estoppel grounds.

On appeal, the judgment in favor of CMSH was reversed.

Prior to trial on damages, the parties stipulated that units 6 through 9 had a fair market value of $1,537,000 in August 1979, the date the lis pendens was recorded, and of $1.9 million in July 1982, the date the lis pendens terminated.

At trial, Antelope asserted that, although the fair market value of the property during the lis pendens period increased by $363,000, due to inflation, its "real value" had declined in an amount exceeding the bond. Mr. Cofer, a certified public accountant, testified for Antelope that the consumer price index, published by the federal Bureau of Labor Statistics, measures inflation. His testimony focused on three indices which provide inflation information for San Francisco-Oakland; the western United States and the United States city average. Between August 1979 and July 1982, the rate of inflation in San Francisco-Oakland was 39.4 percent; 33.17 percent in the western United States; and 32.16 percent for the United States city average. Cofer then calculated what the value of property worth $1,537,000 in August 1979 would have to increase to by July of 1982 in order to keep pace with inflation. In San Francisco-Oakland, the property would have to increase to a value of $2,142,578; in the western states, it would have to increase to $2,046,823; to match the all city average, the property would have to increase to $2,031,299. Comparing these inflation-adjusted figures to the stipulated fair market value of $1.9 million when the lis pendens was lifted, the property suffered an actual decrease in real value of $242,578 under the San Francisco-Oakland index; of $146,823 under the western index; and $131,299 for the United States city average. On cross-examination, Cofer testified that the consumer price index measures inflation in consumer goods and services in a particular geographic area.

In its tentative decision, the court fixed the value of the property on the date the lis pendens was filed at $1,537,000, pursuant to the stipulation of the parties. It then made two calculations.

First, it determined what Antelope actually received during the lis pendens period. The court compared the stipulated fair market value when the lis pendens was filed ($1,537,000) to that when it terminated ($1.9 million). There was a gross increase in property value of $363,000 during the 35-month notice period. The court subtracted from this gain the interest Antelope paid on the note and the $5,000 it paid in real property taxes. The parties stipulated that the total interest was $131,250. The court allocated 25 percent of this amount to units 6 through 9 for a total of $32,800. Using this formula, Antelope had a net gain of $325,200 during the 35 months the property was subject to the lis pendens.

Second, the court determined what Antelope should have received during the 35 months if the lis pendens had not existed. For this calculation, the court assumed that Antelope would have had $1,537,000, unrestricted, and that it invested this sum. To establish damages, Antelope would have to demonstrate an economic loss on its investment in excess of its net gain of $325,200. The court noted that there would be no loss at a reasonable investment of 7 percent per annum. Although there would have been a loss of $33,400 at 8 percent per annum, Antelope did not provide any evidence of economic loss on a $1.5 million investment. Its evidence related solely to inflation, which the court rejected as a measure of damages in this type of action. With or without the lis pendens, Antelope would have received its appreciation or its investment return in inflated dollars. Accordingly, it was improper to consider inflation.

Finding that Antelope failed to present any valid evidence of loss, the court entered judgment for CMSH.

This appeal followed.

## DISCUSSION

■ Appellant contends that the trial court erred by refusing to take into consideration the fact that the property declined a minimum of over $131,000 in real value due to inflation. At issue is the interpretation of section 409.1, which provides in part that "[t]he court, as a condition of granting or denying the motion to expunge, may require that the party prevailing upon such motion give the other party an undertaking of such nature, and in such amount as shall be fixed by the court, such undertaking to be to the effect that such prevailing party will indemnify the other party

for *all damages which he may incur* if he ultimately prevails in the action." (Italics added.) If inflation is a proper factor in computing damages under section 409.1 and assuming that the consumer price index has any relation to inflation in real property, Antelope's damages would exceed the appreciation offset and it would be entitled to a judgment for the full bond amount.[2]

There is little case authority interpreting the "all damages" language of section 409.1. It has been established that section 409.1 does not encompass all monetary relief awarded in an underlying action if the successful cause of action, such as unjust enrichment, does not support the recordation of a lis pendens. In such a case, the judgment cannot be satisfied out of the undertaking. (*Elder* v. *Carlisle Ins. Co.* (1987) 193 Cal.App.3d 1313, 1319 [238 Cal.Rptr. 897].) "The only interpretation of section 409.1 which gives meaning to all of the language contained in the statute and avoids unfair results is that an undertaking given as a condition of expungement or nonexpungement of a lis pendens serves to protect only against damages that actually result from the expungement or nonexpungement." (*Ibid.*)

The "all damages" provision has been construed in a similar context in section 409.2.[3] In *Stewart Development Co.* v. *Superior Court* (1980) 108 Cal.App.3d 266, 276 [166 Cal.Rptr. 450], the court in dicta stated that "the damages recoverable should the lis pendens be expunged and the moving party not prevail on the merits are not limited by Civil Code section 3306.[4]

---

[2] Respondent is incorrect in asserting that even if the court were to use the offered inflation adjusted value, Antelope's loss would still be less than the stipulated appreciation in fair market value. Antelope's loss computations are based on subtracting the stipulated fair market value on the date the lis pendens terminated of $1.9 million from what the real value of the property should have been if it had kept pace with inflation. Under Antelope's theory, the $325,000 in net gain based on appreciation of fair market value is absorbed as part of that inflation, but is still insufficient to compensate it for loss in "real" value. A more appropriate comparison between the property's market value on the date the lis pendens was filed with its "real" value on termination minus its net gain from appreciation still yields damages in excess of the bond amount. Using the lowest "all city average," the property would have had to increase to $2,031,299, a difference of $494,299 from its market value on the date the notice was recorded. After offsetting its $325,200 net gain, Antelope would still have suffered a loss of $169,099.

[3] Section 409.2 provides that a party may move to expunge the notice upon providing an undertaking sufficient to indemnify the recording party for all damages which may be incurred if the moving party does not prevail. The "all damage" language in sections 409.1 and 409.2 relate to the same subject matter and class of persons or things. They should be construed as having the same meaning. (*Kendall-Brief Co.* v. *Superior Court* (1976) 60 Cal.App.3d 462 [131 Cal.Rptr. 515].)

[4] Civil Code section 3306 provides: "The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach, the expenses properly incurred in preparing to enter upon the land, consequential damages according to proof, and interest."

In the first place, the statutory language refers to the damages resulting from the expungement of the lis pendens, not the damages flowing from the breach of contract. Secondly, the damages recoverable under Civil Code 3306 are so severely limited that if the party resisting the motion to expunge could recover only those damages, it is difficult to perceive how he, she or it could ever be afforded adequate relief by the giving of an undertaking, and section 409.2 would be rendered virtually useless." *Stewart* interpreted the "all damages" language as meaning "all damages proximately resulting from the expungement of the lis pendens." It approved the trial court's damage formulation as "the difference between the contract price for the property and the market value of the property at the time of trial. . . . The specific items recoverable as damages will depend upon the facts of the particular case and is best left to adjudication on a case-by-case basis." (*Id.* at pp. 276-277.)

The selection of which measure of damages to apply is within the sound discretion of the trier of fact. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 599 [83 Cal.Rptr. 418, 463 P.2d 770]; *Carlson Industries* v. *E. L. Murphy Trucking Co.* (1985) 168 Cal.App.3d 691, 699 [214 Cal.Rptr. 331].) The trial court here applied the proper measure of damages to determine the effect the filing of the lis pendens had on Antelope. Because there was no meeting of the minds sufficient to form a contract, the contract price of $1,184,500 as urged by CMSH was not the appropriate starting point. Damages under section 409.1 must actually result from the filing of the lis pendens. (*Elder* v. *Carlisle Ins. Co., supra*, 193 Cal.App.3d at p. 1319) The court properly applied this principle by comparing the difference between the fair market value of the property at the time of the filing of the lis pendens with its fair market value at the time of its termination. It then allowed an offset to CMSH for appreciation in fair market value minus Antelope's interest and tax damages. (See *Askari* v. *R & R Land Co.* (1986) 179 Cal.App.3d 1101, 1111-1112 [225 Cal.Rptr. 285].) Antelope does not challenge this measure or the offset. Its concern is solely with the rejection of a claimed decline in value based on inflation reflected in the consumer price index as an additional factor in measuring damages.

The trial court did not abuse its discretion in rejecting a claimed decline in value based on inflation reflected in the consumer price index as a factor in determining the value of Antelope's property after the termination of the lis pendens. Even assuming that the consumer price index has some rational connection to real estate values, inflation is not a damage which "actually results" from the nonexpungement of a lis pendens. (*Elder* v. *Carlisle Ins. Co., supra*, 193 Cal.App.3d at p. 1313.) Inflation is a fact of economic life which pervades all financial transactions. The recording of a lis pendens and

its nonexpungement simply do not proximately cause inflation. (*Stewart Development Co. v. Superior Court, supra,* 108 Cal.App.3d 266, 276.)

■ Where the measure of damages turns on the value of property, whether liability sounds in contract or in tort, the normal standard is that of market value. (*Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 141 [135 Cal.Rptr. 802]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 846, p. 763.) The "fair market value" of real property is "the best price obtainable from a purchaser on a cash sale." (Miller & Starr, Cal. Real Estate 2d (1990) § 30:31, p. 356. It "is measured by the highest price the property would command if offered for sale in the open market with a reasonable time allowed to the seller to find a purchaser who will buy with a knowledge of all the uses to which it may be put." (23 Cal.Jur.3d, Damages, § 49, p. 82; *Sacramento etc. R.R. Co. v. Heilbron* (1909) 156 Cal. 408 [104 P. 979]; *Milton Kauffman, Inc. v. Smith* (1947) 82 Cal.App.2d 302, 304 [186 P.2d 11].) Appellant stipulated that the fair market value when the lis pendens was terminated was $1.9 million. It was not unreasonable for the court to assume that Antelope considered the effects of inflation when it agreed with CMSH that this was the fair market value. As the court correctly pointed out, regardless of the lis pendens, Antelope would have received any return on its investment in inflated dollars.

It is true that "[i]n assessing damages in a personal injury action, it is proper for the trier of fact to take into consideration the diminished purchasing power of the dollar between the time of injury and the time of the verdict, as well as the economic conditions of the state at the time of that verdict." (23 Cal.Jur.3d, Damages, § 66, p. 123.) Appellant asserts that "the law is well settled that courts should take into consideration the effects of inflation in fixing damages." The cases cited in support of this proposition, however, involve awards for future medical expenses and loss of earnings. (See *American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 369, fn. 9 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233] (recognizing that in fashioning lump sum personal injury awards, "juries have always been required to predict future losses on the basis of many variables, including inflationary trends—and then to reduce anticipated losses to present value. [Citation.]"; *Fox v. Pacific Southwest Airlines* (1982) 133 Cal.App.3d 565, 570, fn. 5 [184 Cal.Rptr. 87] (evidence of future inflation rates may partially offset effect of discounting of damages for wrongful death to present value); *Rodriguez v. McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 662 [151 Cal.Rptr. 399] (jury properly considered factually based inflationary trends in measuring personal injury damages); *Niles v. City of San Rafael* (1974) 42 Cal.App.3d 230, 243 [116 Cal.Rptr. 733] (personal injury-future increases of medical costs).) These cases are inappli-

cable to a determination of past, actual damages suffered during the lis pendens period. As noted by the First District, "[w]e are aware of no California contract case in which damages were awarded to compensate for the effects of inflation or the costs of borrowing money. To the extent that recognition has been given to these factors, the issue has arisen in the context of tort cases wherein the purposes and calculation of damages differ from those in contract disputes. [Citations.]" (*C. Norman Peterson Co.* v. *Container Corp. of America* (1985) 172 Cal.App.3d 628, 650 [218 Cal.Rptr. 592].)

Finally, Antelope argues that the trial court's alternative method of computing damages—based on projected economic loss on an investment of $1,537,000 which exceeded its net gain of $325,200—places an unreasonable evidentiary burden on a seller. We have no need to address this argument. Antelope proceeded solely on a theory of damage based on inflation. Aside from the stipulated loss due to taxes and interest, Antelope offered no evidence of any other economic damage to demonstrate its entitlement to damages on the bond.

### DISPOSITION

The judgment is affirmed. Costs to CMSH.

Carr, Acting P. J., and Marler, J., concurred.