**In re Donald Lee ROFFLE and Naomi Joan Roffle, Debtors.**

**In re Tina (nmn) FALSETTA, Debtor.**

**Bankruptcy Nos. 97–11671 RJB, 97–12217 RJB.**

United States Bankruptcy Court, D. Colorado.

Jan. 12, 1998.

---

4. As noted, the Bankruptcy Court's Order does not contain any findings of fact or conclusions of law on the issue of the existence of "fiduciary capacity." The Debtors made an oral motion to dismiss at trial based on the nonexistence of a fiduciary relationship, and that motion was denied by the Bankruptcy Court. However, it did not state its reasons for doing so. *See* Appellant's Appendix, Tab 6, Transcript, pp. 82–84. We are therefore left with no record to review.

Ellen Welner, George Carlson, George T. Carlson & Associates, Denver, CO, for Applicant.

MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THESE MATTERS came on for hearing on December 1, 1997, on the Amended Chapter 13 Fee Applications of George T. Carlson & Associates ("Applicant") in the above-captioned cases. In the *Roffle* case Carlson requests $1,422.50 in fees and $140.83 for

expenses, for a total of $1,563.33. In the *Falsetta* case the request is for $1,442.50 in fees and $144.90 for expenses, for a total of $1,587.40.

Originally, on September 10, 1997, the Applicant had requested, in an abbreviated application, $1,250.00 in fees in the *Roffle* case. In order to enable the Court to make proper findings under 11 U.S.C. § 330(a)(3), on September 11, 1997, the Court ordered that within 30 days the attorneys file a fee application in accordance with Local Bankruptcy Rule 216(a) which requires a full, detailed application setting forth the nature of the services, the result obtained, etc., including a statement of the number of hours spent on the particular matter and by whom, and detailed time entries from records kept contemporaneously. The response to this order was the Amended Chapter 13 Fee Application whereby the fee request was increased $172.50.

In the *Falsetta* case the original fee application was again for $1,250.00 for fees, and after the Court ordered on August 28, 1997, that a Local Rule 216(a) application be filed, an Amended Chapter 13 Fee Application was filed requesting an additional $192.50 in fees.

After receipt of the Amended Fee Applications, the Court analyzed them and issued its Order for Hearing on Fee Application in both cases. In the *Falsetta* case the Court informed the Applicant that it would allow $1,122.50 in fees and $144.90 in costs. In the *Roffle* case the Court stated that it would allow $1,208.50 in fees and $140.83 in costs. In both cases the Applicant was allowed an additional 20 days to supply the Court with affidavits and other evidence meeting the requirements of Rule 56(e), Fed.R.Civ.P.

The Applicant then filed a Response, which included a request for a hearing, and several Declarations signed "under penalty of perjury under the laws of the State of Colorado." The Declarations of the Applicant's three attorneys are original documents. The Dec-

larations by two paralegals (Rose Mary Zapor and Karen Schirmer) are copies, as is the Declaration by John Berman, who testified at the hearing. The Declaration of Jon P. Lozow, another attorney, is an original and will be considered by the Court. This Court will not accept the Declarations which are not originals because they do not comply with the requirements of Rule 56(e). Likewise, the Court will not consider the Declarations of six attorneys submitted in the *Falsetta* case at the hearing, i.e., the Declarations of attorneys Richard N. Gonzales, Barton S. Balis, L.B. Schwartz, Wayne E. Stockton, M. Steven Peters, and Peter Mattisson. One Declaration submitted at the hearing, by attorney William D. Nelsch, will be accepted and considered.

In its Response and at the hearing the Applicant stressed three main points: (1) the hourly rates for attorney Carlson should be increased to $175, for attorney Welner to $150, and for attorney Mathiowetz to $125; (2) that this Court generally allows $1,200 for debtor's attorney's fees in Chapter 13 cases without a full Rule 216(a) application and that this practice should continue but the Court should look solely to the market place [1] to determine such fees; and (3) that the Court should not disregard the "lodestar" analysis, but should specifically itemize the deficiencies in the fee applications, i.e., that the applicant cannot ascertain from the Court's Order for Hearing on Fee Application why the fees requested are not allowed.

As to the first point, the request to approve the indicated rates, *supra,* is denied. Those rates were not requested in the fee applications. The fee applications under consideration request $150/hour for Carlson; $125/hour for Welner; and $125/hour for Mathiowetz in the *Falsetta* case (Application filed September 9, 1997), and $100/hour in the *Roffle* case (Application filed October 9, 1997).

---

1. However, as one attorney has remarked: "...[we] have to remind ourselves as we approach the fee issues which confront us, that unlike Steven Spielberg, Michael Jordan and Deion Sanders, we are not free to charge whatever the market will bear. Lawyers are fiduciaries; Arnold Schwarzenneger is not. And lawyers' fees, by ethical mandate, must be reasonable; Julia Roberts' fees are subject to no similar limitation." Lawrence J. Fox, *Money Didn't Buy Happiness.* Dickinson Law Review, vol. 100, no. 3 (Spring 1996).

■ As to the second point, the Court does look to the market place to ascertain whether the rates charged are reasonable for comparably skilled attorneys outside the bankruptcy arena. But that is not the *sole* criteria the Court must follow. That benchmark is listed in 11 U.S.C. § 330(a)(3)(E). But § 330(a)(3) also mandates that the Court consider other factors including the benefit and necessity of the services to the debtor. 11 U.S.C. § 330(a)(3)(B).

The third point, that this Court's Order for Hearing on Fee Applications lacks detail and specificity, is debatable. In *both* cases the Court, in it's Order of October 15, 1997, specified the following deficiencies in the Amended Chapter 13 Fee Applications:

[x] Insufficient support for attorney and/or paralegal hourly rates charged or insufficient evidence of rates for comparable services outside of bankruptcy.

[x] Time entries are lumped making it difficult to discern how much time is spent on a particular task.

[x] Attorney has failed to exercise billing judgment, for example, by billing for time to correct the attorney's mistakes, unproductive time or duplicative services.

Both Amended Applications contain the following identical language as the only apparent "evidence" of rates for comparable services outside of bankruptcy:

The hourly rates charged by Applicant are comparable to the rates charged by other attorneys and paralegals in the Denver metropolitan area, whether in the bankruptcy field or in areas outside of bankruptcy.

Such unsworn assertions, especially with no specific identification of the attorneys and paralegals surveyed and in what fields of law they practice, does not give this Court any assistance in making a factual determination under § 330(a)(3)(E).

All the Applicant need do in order to ascertain whether time entries are lumped making it difficult to discern how much time is spent on a particular task is to examine its own application. The Court will detail such "lumping" later in this opinion and order.

■ As to the failure to exercise billing judgment, in both cases the Applicant has charged the full hourly rate for attorneys to prepare and review its own fee application. This Court only allows one-half[2] of a reasonable hourly rate for such activity because there is no benefit to the client for such activity. The only benefit inures to the Applicant.

■ The evidence presented by the Applicant at the hearing was as follows. John Berman, an attorney, testified that he is a sole practitioner who has practiced in estate law, estate planning, and bankruptcy. He has not done any Chapter 13 bankruptcy work for several years. In his present practice in estate law, probate and estate planning he charges, and apparently receives, $180/hour **EXCEPT** for guardian ad litem work for which he charges and receives $100 to $140/hour. He has reviewed attorney fee applications in probate court and testified that younger attorneys (7 years or less experience) charge a minimum of $125/hour. More experienced attorneys charge $200 to $300/hour. Implicit in this testimony is the assumption that an attorney's worth increases automatically the longer he holds a license to practice. That is an erroneous assumption. There are many young attorneys whose value is obviously higher than that of many of their more senior colleagues and vice versa. He also testified that he **does not** bill separately for paraprofessionals but rather considers their costs as part of his overhead. The Applicant here charges separately for paralegal work. He also testified as to the "normal" amount of time he spent in performing legal services in a Chapter 13 case, although, as stated, *supra*, he hasn't done any Chapter 13 work for several years.

Next Robert Montgomery testified. He has been an attorney since 1971 and is involved general practice, family law and bankruptcy law. He testified that he files about 10 to 12 Chapter 13 cases per year. His normal fee is $175/hour which rate has been approved in domestic relations cases in state court. He testified that he has reviewed

**2.** *In re Casull,* 139 B.R. 525, 529 (Bankr.Colo. 1992).

others' fee applications in domestic relations cases and that attorneys charge $100 to $125/hour when they have less than 5 years experience. For 20 years experience the standard is $175/hour in those cases. Again, it is erroneously assumed that seniority in the bar automatically entitles an attorney to charge higher hourly rates. Sometimes, he testified, attorneys are allowed $200 to $300/hour in domestic relations cases. In the 10 to 12 Chapter 13 cases he files annually in this Court he only submits fee applications for the "customary fees," i.e., the $1,200 usually allowed by this Court without a full and detailed fee application. He does this because, in his words, "It's not worth his time to go after more." He also testified that he bills his paralegal's time at $60/hour and that he has seen paralegal rates in domestic relations matters ranging from $30 to $75/hour.

All three of the attorneys for the Applicant (George T. Carlson, Ellen R. Welner, and Thomas M. Mathiowetz) testified at the hearing. The substance of their testimony was to state their individual qualifications and experience as contained in an exhibit to Carlson's Declaration and which exhibit is attached hereto. In addition, they testified as to the experience of their paralegals and the rates at which they bill for paralegals' time. Welner testified that the Applicant often only requests $1,200 in cases where actual billing would indicate more than that. However, the applicant only "itemizes" when the fees are over $1,400 to $1,500. Carlson testified that in another case (Case No. 95–19438 PAC) before a different judge of this Court that hourly rates ranging from $110 to $200 were approved. However, this was a Chapter 11 case.

In addition, attached to the Declarations of the Applicant's attorneys were fee requests and orders approving these requests of the Applicant from other Chapter 13 cases which were entered in other divisions of this Court.

The problem with the evidence concerning fee awards for other cases is that the Applicant failed to show this Court that those cases were comparable to the cases *sub judice*, especially the Chapter 11 case.

In addition, the Applicants failed to proffer any specific testimony concerning the two specific cases at hand. All of the testimony and Declarations were directed to the Applicant's work in Chapter 13 cases generally. No testimony or other evidence was offer concerning the uniqueness or difficulty of these two cases.

■ The Court finds from all the evidence that the reasonable hourly rates based on the customary rates charged by comparably skilled practitioners in cases other than bankruptcy cases can range from $100 to $200 per hour and that the Applicant's rates of $100 to $150 as set forth in the Amended Applications fall within that range. In addition, the reasonable hourly rates for paralegals based on the customary rates charged by comparably skilled practitioners in cases other than bankruptcy cases can range from $25 to $75 per hour and the Applicant's rates of $40 to $50 as set forth in the Amended Applications fall within that range.

■ In the *Roffle* case a summary of the fees requested on October 9, 1997, is as follows:

| | | |
|---|---|---|
| Carlson ($150/hour) | 1.3 hours | $ 195.00 |
| Welner ($125/hour) | 3.1 hours | $ 387.50 |
| Mathiowetz ($100/hour) | 1.9 hours | $ 190.00 |
| Campbell ($50/hour) | 11.8 hours | $ 590.00 |
| Waring ($40/hour) | 1.5 hours | $ 60.00 |
| Total | | $1,422.50 |

After a careful re-analysis the Court finds the following. Carlson billed for 0.2 hours on 9/17/97 to review his fee application. This should be reduced to 0.1 hours. Welner billed for 0.2 hours to "Direct preparation and filing of certificate of non-contested matter" on 8/25/97. This is a clerical function and the entire 0.2 hours is denied. Campbell billed 0.3 hours on 2/7/97 for "Conference with client re: Direct and review mailing of Notice of Automatic Stay." This time will be disallowed because the activities are lumped. On 3/17/97 Waring lumped activities and billed for 0.4 hours for "Prepare Notice of filing and Plan; draft letter of instructions to client." This time will be disallowed. On 5/7/97 Waring billed for 0.3 hours (18 minutes) to "Draft letter to client re: missed § 341 meeting." This shouldn't have taken more than 5 minutes. The Court would allow 0.1 for this activity. On 9/17/97 Waring billed 0.5 hours to "Prepare fee application."

Again, the Court would allow 1/2 of that time, or 0.25 hours. Therefore, based upon this "bean counter" type of analysis, the summary for this case should read as follows:

| | | |
|---|---|---|
| Carlson ($150/hour) | 1.2 hours | $ 180.00 |
| Welner ($125/hour) | 2.9 hours | $ 362.50 |
| Mathiowetz ($100/hour) | 1.9 hours | $ 190.00 |
| Campbell ($50/hour) | 11.5 hours | $ 575.00 |
| Waring ($40/hour) | .65 hours | $ 26.00 |
| Total | | $1,333.50 |

In the *Falsetta* case a summary of the fees requested on September 9, 1997, is as follows:

| | | |
|---|---|---|
| Carlson ($150/hour) | 1.6 hours | $ 240.00 |
| Welner ($125/hour) | 3.6 hours | $ 450.00 |
| Mathiowetz ($125/hour) [3] | 1.1 hours | $ 137.50 |
| Campbell ($50/hour) | 7.2 hours | $ 360.00 |
| Waring ($50/hour) [4] | 1.8 hours | $ 90.00 |
| Hampton ($50/hour) | 2.2 hours | $ 110.00 |
| Apjoke ($50/hour) | 1.1 hours | $ 55.00 |
| Total | | $1,442.00 |

After a careful re-analysis the Court finds the following: Carlson billed a total of 0.4 hours to read and sign the fee application on 8/26/97 and 9/8/97. This time should be reduced to 0.2 hours. Mathiowetz billing rate should be reduced to $100/hour as it was claimed one month later in the *Roffle* case. On 4/23/97 Campbell billed 0.2 hours for "Faxed stipulation to Ginger." This is clerical work and should not be allowed. On 6/23/97 Campbell billed 0.2 hours for "Copied and mailed stipulation with cover letter to client." Again, this is clerical work and will not be allowed. On 2/21/97 Waring billed 0.3 hours to "File case in Clerk's office." This is clerical activity and should not be allowed. On 8/25/97 and 9/3/97 Waring billed a total of 1.5 hours for preparation of the fee application. Only 0.75 hours be allowed for this activity. In addition, Waring's billing rate should be reduced to $40/hour as it was claimed one month later in the *Roffle* case. On 2/21/97 Apjoke billed 0.4 hours to "Prepare and mail Motion to Void Judicial Lien." This is lumping and part of the activity is clerical. None of this time should be allowed. On 2/24/97 Apjoke billed 0.3 hours to "Prepare and mail Notice of Filing and Plan; mail schedules and instructions to client." This is lumping and part of the activity is clerical. None of this time should be al-

lowed. Therefore, performing the "anal retentive" type of analysis, the summary for this case should read as follows:

| | | |
|---|---|---|
| Carlson ($150/hour) | 1.4 hours | $ 210.00 |
| Welner ($125/hour) | 3.6 hours | $ 450.00 |
| Mathiowetz ($100/hour) | 1.1 hours | $ 110.00 |
| Campbell ($50/hour) | 6.8 hours | $ 340.00 |
| Waring ($40/hour) | .75 hours | $ 30.00 |
| Hampton ($50/hour) | 2.2 hours | $ 110.00 |
| Apjoke ($50/hour) | .4 hours | $ 20.00 |
| Total | | $1,270.00 |

Neither of these cases involved difficult or unusual legal issues, and both cases were fairly typical Chapter 13 cases. In *Roffle*, filed February 10, 1997, the debtors had a house valued at $205,000 with about $16,000 equity; a 1989 auto valued at $2,000 with $300 equity; about $4,000 in priority unsecured tax debt; and about $11,093 in general unsecured debt. They were paying $1,680/month on their first mortgage to Key Bank and were almost $10,000 in default when they filed, and they were almost $7,000 in arrears on their second mortgage to Professional Bank. Out of their net income of $4,339/month they were going to pay $1,000/month into their plan to cure these arrearages and to pay $9,500 to the IRS for its secured lien on their house. Key Bank had already commenced foreclosure proceedings on the house. By May 1997 they were already behind in post-petition payments to Key Bank, and in June Key Bank received relief from stay to continue its foreclosure. So an amended plan was filed which indicated that Key Bank was to be paid all arrearages "outside" the plan. No amended budget was filed showing the source of this $10,000. Nevertheless, the amended plan was confirmed in August 1997.

In *Falsetta* the Debtor had a house valued at $84,000 with about $5,000 equity; a 1993 auto valued by the Debtor at $5,500 but with a lien of $19,000; $1,000 in priority unsecured tax debt; and $7,554 general unsecured debt. Out of a net income of $1,996/month the Debtor was going to pay $150/month into a plan. The combined total of her house payments on her first and second mortgages was $776/month and she was

---

**3.** In the *Roffle* case the Amended application was filed one month **later** and they only requested $100/hour for Mathiowetz.

**4.** Again, one month **later** in the *Roffle* case they only requested $40/hour for Waring.

$4,800 in default at the time she filed bankruptcy. The plan would cure the defaults in the mortgage payments, pay the priority taxes and $174 to the general unsecured creditors. After some skirmishes with the creditors, an amended plan was filed and confirmed in August 1997.

Even though the "calculated" fees, *supra*, i.e., *Roffle*—$1,333.50 and *Falsetta*—$1,270, are more than originally proposed to be allowed by the Court, this does not mean that the analysis is over. The Court must consider the benefit and necessity of such services to the debtors. 11 U.S.C. § 330(a)(3)(B). As Judge Matheson of the Court has said:

> The Court understands the desire of counsel to generate more income. The Court also realizes that one way to do so is by increasing the hourly rate charged. The problem is that the rate sought to be charged by the attorney is beyond the rate consumer debtors can reasonably be required to pay. The rates charged may very well be appropriate in representing commercial interests in reorganization cases and, indeed, rates of $150.00 per hour and above are regularly allowed by the Court. However, such rates are simply not compatible with the interests being represented in cases such as that now before the Court. As the Third Circuit most properly and succinctly observed, "Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3rd Cir.1983). This is not intended to demean the services provided by counsel in Chapter 13 cases but, rather, recognizes that the issues which arise in Chapter 13 cases generally do not require sophisticated or particularly involved legal analysis and advice, which might warrant a higher hourly rate. *In re Casull*, *supra*, at 528.

■ In these two routine, "vanilla" Chapter 13 cases, the Court finds that an appropriate maximum hourly rate for the attorneys is $125.00.

Even if the Court were to allow the reasonable maximum hourly rate of $125.00 the question is not ended. Again, quoting from Judge Matheson's opinion:

In the final analysis, the allowance of fees for professionals is a highly subjective matter. The admonition of the statute is that the Court is to allow a "reasonable" fee and there is a range of reasonableness. *In re Casull*, *supra*, at 530.

■ After considering all the evidence presented, and upon reflection of all the thousands of Chapter 13 cases coming before this Court over the last 16 years the undersigned has been on the bench, including many recent Chapter 13 cases where the fees **requested** have been **below** $1,200, this Court concludes that the reasonable fees in these two cases should be $1,200 each. It is, therefore,

ORDERED that in the *Roffle* case, Case No. 97–11671 RJB, the Applicant shall be allowed fees in the sum of $1,200 and expenses in the sum of $140.83, for a total of $1,340.83 of which $340.83 is payable through the Chapter 13 plan. It is

FURTHER ORDERED that in the *Falsetta* case, Case No. 97–12217 RJB, the Applicant shall be allowed fees in the sum of $1,200 and expenses in the sum of $144.90, for a total of $1,344.90 of which $1,044.90 is payable through the Chapter 13 Plan.

Exh. "A".

## George T. Carlson & Associates

| | George T. Carlson |
|---|---|
| Attorneys at Law | Ellen R. Welner |
| | Thomas M. Mathiowetz |
| 4219 South Broadway | Tel: (303) 789–1313 |
| Englewood, Colorado 80110 | Fax: (303) 789–1789 |

### FIRM RÉSUMÉ

#### George T. Carlson

**Education:** 1968 B.A. Macalaster College (St. Paul Minn.); 1971 J.D. Univ. of Denver, College of Law (Law Review). **Admitted:** 1972 State Bar of Colorado; 1972 U.S. Court of Appeals, Tenth Circuit; 1972 U.S. District Court, District of Colorado. **Reported Decisions:** *In re McTearnen*, 54 B.R. 764 (Bankr. D.Colo.1985); *In re Whitney*, 70 B.R. 443 (Bankr.D.Colo.1987). **Author:** Editor–Publisher, *Colorado Bankruptcy Letter*; Question–Answer column, *The Denver Post*. **Lecturer:** Frequent speaker at continuing legal education programs—including "Collection Law in Colorado—Bankruptcy Law." **Mem-**

ber: Colorado Bar Assn. and Arapahoe County Bar Assn.

### Ellen R. Welner

**Education:** 1974 B.A. Univ. of Colorado (Phi Beta Kappa); 1978 J.D. Univ. of Denver, College of Law. **Admitted:** 1978 State Bar of Colorado; 1978 U.S. District Court, District of Colorado. **Author:** Associate Editor of *Colorado Bankruptcy Letter.* **Teaching:** Adjunct faculty instructor—"Creditor Rights and Bankruptcy," Arapahoe Community College. **Lecturer:** Chapter 13 Trustee seminar—"Tax Liens in Bankruptcy."

### Thomas M. Mathiowetz

**Education:** 1969 B.A. St. Cloud State Univ. (Minn.); 1982 J.D. Lincoln Law School of Sacramento (Salutatorian, Outstanding Graduate Award, *Corpus Juris Secundum* Award, Moot Court Award for Oral/Written Advocacy—Best Written Brief, Associate Editor, *Voir Dire* 1980–1982, SBA Treasurer 1980–1982). **Admitted:** 1982 State Bar of California; 1996 State Bar of Colorado; 1988 U.S. Court of Appeals, Ninth Circuit; 1996 U.S. Court of Appeals, Tenth Circuit; 1993 U.S. Tax Court; 1982 U.S. District Court, Eastern District of California; 1988 U.S. District Court, Northern District of California; 1996 U.S. District Court, District of Colorado. **Reported Decisions:** *Stitt v. Williams,* 919 F.2d 516 (9th Cir.1990); *CMSH Co. v. Antelope Development Inc.,* 223 Cal.App.3d 174, 272 Cal.Rptr. 605 (1990). **Author:** "Proposition 51: A Basic Primer on Apportionment of Non–Economic Damages," *Forum,* California Trial Lawyers Assn. (May 1992); "Independent Contractor or Employee? Be Wary of Payroll–Tax Audits," *Supervisor's Employment News* (Oct. & Nov. 1991), *reprinted California Chiropractic Association Journal* (Jan. & Feb. 1992).